UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHARLES E. WADE                    )
                                   )    Case Nos: 1:04-CR-134 \ 1:08-CV-51
v.                                 )
                                   )
UNITED STATES OF AMERICA           )    Chief District Judge Curtis L. Collier
                                   )

## MEMORANDUM

Charles E. Wade ("Wade") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Crim. Court File No. 108). Wade contends the six (6) level sentencing guideline enhancement for creating a substantial risk of harm to a minor was based upon improper judicial fact-finding and counsel was ineffective for failing to raise a verbal objection to the enhancement.

Having reviewed the materials thus submitted, together with the record of the underlying criminal case, the Court finds they show conclusively Wade is not entitled to relief on the claims asserted; thus, an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Accordingly, the Court will decide the matter and explain the reasons Wade's asserted grounds for relief are without merit. Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

## I.    BACKGROUND

### A.    PROCEDURAL BACKGROUND

On January 25, 2005, Wade was indicted in a thirteen-count superseding indictment and on May 20, 2005, he pleaded guilty to Count One, conspiracy to manufacture fifty (50) grams or more

of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B). Petitioner stipulated to the underlying facts supporting his plea in the plea agreement (Crim. Court File No. 67).

Using the 2004 version of the United States Sentencing Guidelines ("Guidelines" or "USSG"), the probation officer determined Wade's base offense level was 30 pursuant to USSG § 2D1.1(c)(5) (Presentence Investigation Report ("PSR") at ¶ 34). In calculating his Guidelines range, the probation officer applied a two-level enhancement under § 2D1.1(b)(1) because there was a reasonably foreseeable use of firearms by codefendants, a six-level enhancement under USSG § 2D1.1(b)(6)(c) for creating a substantial risk of harm to a minor, and a three-level reduction for acceptance of responsibility under USSG § 3E1.1(a),(b), resulting in a total offense level of 35 (PSR at ¶¶ 35-36, 41,44). Based on his total offense level of 35 and a criminal history category of I, Wade's Guidelines range for imprisonment was 168 months to 210 months (*id*. at 66).

Wade filed numerous objections to the PSR, including the six-level enhancement for creating risk of substantial harm to a minor (Addendum to the Presentence Report, "Addendum"). On September 16, 2005, at the sentencing hearing, Wade's counsel only raised one objection to the PSR concerning the method of computing the drug quantity. The Court overruled the objection. Wade also made a *pro se* objection regarding the quantity of iodine recovered. Wade subsequently withdrew the objection and the Court found the PSR accurately stated the Guidelines range (Crim. Court File No. 75, 113). Wade was sentenced 168 months of imprisonment, four years of supervised release, and a $100 special assessment (Crim. Court File No. 79).

Wade appealed, alleging various sentencing errors. The Court of Appeals affirmed, finding the district court did not err in using the iodine drug conversion formula "to estimate the scope of

the conspiracy" and the sentence was reasonable (Crim. Court File No. 102). On February 27, 2008,

Wade timely filed this § 2255 motion (Crim. Court File No. 108).

## B.     FACTUAL BACKGROUND

The following pertinent facts were stipulated by Wade in the plea agreement (Court File No.

67) and are taken from the PSR:

> On October 24, 2003, an agent with the 10th Judicial District Drug Task Force of Bradley County, Tennessee observed Larry Baliles and Charles Wade in a vehicle outside the ABC Mart in Bradley County. The agent knew that Baliles did not have a driver's license and further knew that the ABC Mart distributed pseudoephedrine to methamphetamine cooks. Additionally, law enforcement had information from a reliable confidential informant that Wade and Baliles had been manufacturing methamphetamine in the recent past. As soon as Baliles pulled onto the street, law enforcement attempted to stop him, but Baliles sped away at a high rate of speed. The agent was only able to stop him after Baliles' engine failed. At that time, Wade and Baliles were placed under arrest and the vehicle was searched. Agents found 11.4 grams of methamphetamine (lab tested) under Wade's seat. Baliles stated they were going to Wade's girlfriend's, Lois Mowery, residence. Wade, on the other hand, stated that they were actually going to Meigs County, Tennessee to a methamphetamine lab there.

> At that point, the agent went to Lois Mowery's residence in Bradley County. Immediately upon approaching the residence, the agent could smell the odor of a methamphetamine lab. Law enforcement agents were met at the front door by Lois Mowery carrying her infant child. They asked Ms. Mowery for permission to search and she gave written consent to search. Inside the residence they found a methamphetamine lab. A liquid sample from the lab was submitted to the TBI crime lab and came back positive for the presence of methamphetamine. Some of the items found in the house included: a Mountain Dew bottle with several pieces of plastic hose assembly (a gasser), a gallon of muriatic acid, rubber tubing, a second Mountain Dew bottle with a liquid inside, a propane cylinder, a canvas bag with iodine stains, a glass bowl with meth residue, glass pipes and straws, iodine stained funnels, a glass bottle partially full of a red phosphorus type liquid, hydro peroxide, an electric burner, aluminum foil, starter fluid, coffee filters, a container of iodine prill crystals, numerous small baggies, Super B Vitamin B12 (cutting agent), an empty box of pseudoephedrine pills, blister packs of pseudoephedrine pills, Red Devil lye, and numerous other items. The Drug Task Force also searched the area in Meigs County on Gamble Road where Wade claimed there was a methamphetamine lab. This area proved to be "a methamphetamine trash lab site." Some of the items included: red phosphorus, rubber tubing, rubber gloves with iodine stains, a 500 ml flask, muriatic

acid, and numerous other items. Baliles and Wade were released on bond.

. . .

On August 11, 2004, law enforcement received information that Wade and Mowery were "hiding out" in a residence in Bradley County. Both of them had active arrest warrants at that time. Officers went to 1120 Eads Bluff Road. They noticed the lights were on, but they could not determine if anyone was at the residence. Officers noticed several items on the porch associated with the manufacturing of methamphetamine and the odor of a methamphetamine laboratory emanating from the residence. The officers secured the property and obtained a search warrant.

The search warrant was executed and a large methamphetamine laboratory was found. Also found inside the residence were documents that linked Wade to the residence. Items found at the residence included: 1000 matchbook case, a Pyrex dish with red phosphorus stains, Coleman fuel, coffee filters, digital scales, gas treatment, muriatic acid, boxes of pseudoephedrine, strainers, sandwich baggies, aluminum foil, iodine crystals, three gallons of tincture iodine, Heet, and other used blister packs of pseudoephedrine. A loaded Winchester Model 943030 was located in the middle of the methamphetamine lab.

Wade and Mowery were not present when the search warrant was executed. Both knew they were wanted by law enforcement and had relocated to Gasden, Alabama. A few days later, both Wade and Mowery were apprehended in a motel room in Gadsden. Items located in their motel room included an expensive methamphetamine lab and numerous loaded firearms.

. . .

Mr. Wade and Ms. Mowery's daughter (age 2) did reside with the defendants and had access to the lab components found in the house. During methamphetamine production, several toxic and explosive fumes are released into the air. These fumes can pose a significant threat to the health and safety of individuals near the production site. Exposure to these substances can cause serious short-term and long-term health problems, including damage to the brain, liver, kidneys, lungs, eyes, and skin. The quantity of the chemicals found at the residence, the manner in which the toxic substances were disposed, the duration of the offense, and the location of the laboratory created a substantial risk of harm to the defendant's child.

## II.    STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th

Cir.), *cert. denied*, 517 U.S. 1200 (1996).

## III.    ANALYSIS

Wade claims the Court engaged in improper judicial fact-finding in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005), by increasing his Guidelines range by six levels for creating a risk of substantial harm to a minor.  However, because he failed to raise this issue on direct appeal, this claim is procedurally defaulted.  He also contends his counsel was ineffective for failing to make an oral objection, in addition to the written objection, to the Guidelines enhancement.

### A.    Improper Judicial Fact-Finding

To obtain relief under § 2255 based upon a error where there is a procedural default, Wade was required to show (1) cause excusing his procedural default and (2) actual prejudice resulted from the error of which he now complains.  *United States v. Frady,*  456 U.S. 152, 167-68 (1982); *Murr v. United States,* 200 F.3d 895, 900 (6th Cir. 2000); *Napier v. United States,* 159 F.3d 956, 961 (6th Cir. 1998); *Nagi,* 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied,* 519 U.S. 1132 (1997); *Ratliff v. United States,* 999 F.2d 1023, 1025 (6th Cir. 1993); *McNeil v. United States,* 72 F. Supp.2d 801, 808 (N.D. Ohio 1999).  This is commonly known as the *Frady* cause-and-prejudice test.  "Actual prejudice" does not mean errors at a criminal defendant's sentencing that created a mere possibility of prejudice, but rather that the errors worked to the defendant's actual and substantial disadvantage, infecting his entire sentencing with error of constitutional dimensions.  *Frady,* 456 U.S. at 170.

Wade gives no explanation for his failure to raise this issue previously.  Also, Wade has not demonstrated he suffered any resulting prejudice because there was no *Apprendi* or *Booker*

violation. Accordingly, this claim fails.

In *Apprendi*, the Supreme Court held facts that increase the penalty for a crime beyond the statutory maximum must be included in the indictment and proven beyond a reasonable doubt. 530 U.S. at 490. Wade pleaded guilty to Count One of the superseding indictment, a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B), which established a statutory maximum of forty years of imprisonment. Although the facts found by a preponderance of the evidence increased Wade's Guidelines range, they did not raise his sentence beyond the statutory maximum of forty years of imprisonment. Thus, the sentence imposed did not violate Wade's constitutional rights as defined by *Apprendi*.

In *Booker*, the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Furthermore, the Court of Appeals for the Sixth Circuit has found that "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury." *United States v. Gates*, 521 F.3d 703, 708 (6th Cir. 2006); *see also United States v. Gray*, 521 F.3d 514, 543 (6th Cir. 2008)("district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*.")(quoting *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006)). Wade's *Booker* claim fails for the same reason his *Apprendi* claim failed - his sentence was not increased beyond the statutory maximum.

Because Wade offers no excuse for his default and was not prejudiced by the permissible

judicial fact-finding, his sentence is not unconstitutional and he is not entitled to relief under § 2255.

**B.     Ineffective Assistance of Counsel**

Wade claims his counsel was ineffective for failing to orally object, in addition to the prior written objection, to the six-level enhancement for creating a risk of substantial harm to a minor. Because Wade can neither show the results of his sentencing would have been different nor demonstrate his counsel's error was outside the bounds of reasonable existing professional standards, this claim also fails.

**1.     Applicable Law**

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at

690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### 2. Failure to Orally Object to Improper Sentencing Guidelines Enhancement

Wade contends his counsel was ineffective for failing to orally object to the six-level Guidelines enhancement for substantial harm to a minor – namely, his two-year old daughter.

In *United States v. Merrell*, 213 F. App'x 402, 407 (6th Cir. 2007), the Court of Appeals upheld a six-level Guidelines enhancement for creating a risk of substantial harm to a minor,

regardless of whether the child in fact lived at the residence, stating "[a] child need not live at a residence to be subject to the risk of harm caused by the manufacture of methamphetamine. Access and presence is sufficient, given the extraordinary risks inherent in the drug-making process." *See also United States v. Layne*, 324 F.3d 464, 468-69 (6th Cir. 2003) (stating one of the hazards of methamphetamine laboratories is that they are often located and operated around children); *United States v. Skelton*, 101 F. App'x 89, 91 (6th Cir. 2004) (affirming application of six-level enhancement where methamphetamine was produced outside the home where the child resided and in a rural area); *United States v. Massey*, 79 F. App'x 832, 837 (6th Cir. 2003) (upholding application of six-level enhancement where defendant was "aware that children were present on the premises at various times.").

There is ample evidence in Wade's presentence report to support the conclusion by a preponderance of the evidence that Wade was creating a risk of substantial harm to a minor. Wade's daughter lived in the residence where investigators located several pieces of evidence indicating the existence of a methamphetamine lab. Furthermore, Wade's girlfriend, Lois Mowery, affirmed the fact that both she and Wade manufactured methamphetamine in the presence of their child ("Addendum"). This evidence was sufficient to establish by a preponderance of the evidence that the sentencing enhancement was appropriate in this case. Because the enhancement was appropriate, it would have been fruitless for counsel to object. Thus, Wade cannot show that the results of his sentencing would have been different had his counsel orally objected to the guideline enhancement nor can he demonstrate that his counsel's error was outside reasonable existing professional standards.

**IV.  CONCLUSION**

For the reasons stated above Wade is not entitled to any relief under 28 U.S.C. § 2255 as his sentence does not violate the Constitution or laws of the United States.   Accordingly, Wade's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

An Order shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**